BRINKLEY v. BRINKLEY, appellant.

*Practice — trial by jury — feigned issue.*

After an equity case has been tried and finally submitted for decision, the court, at special term, has the power, of its own motion, to direct certain issues therein to be passed upon by a jury, if the case be one in which, under similar circumstances, the late court of chancery was authorized to direct a feigned issue.

The Code has not changed the former practice in respect to feigned issues, except so far as to substitute a simple interrogatory for the legal fiction of a wager.

A *dictum* in *O'Brien* v. *Barnes*, 4 Bosw. 657, questioned and limited.

APPEAL from an order of the special term in an equity case directing, of its own motion, certain issues to be sent to a jury after the case had been tried and finally submitted for decision.

The action was brought for a limited divorce and alimony.

The questions raised by the pleadings are: 1. The residence of the plaintiff. 2. Whether there was a marriage. 3. Whether there was an abandonment. 4. Whether there was another action pending for the same cause in the courts of Tennessee?

On the 13th of August, 1872, a motion was made to settle these issues and send them to a jury, which was denied, upon the ground

that the motion had not been made within the time required by the rules and practice of the court.

On May 13th, 1873, an order was made by consent, sending the case to the circuit for trial, and it was stipulated that this trial should be by the court, without a jury.

The action came on for trial before Mr. Justice VAN BRUNT, without a jury, on June 3, 1873, and continued, from day to day, until June 13th, when it was finally submitted for decision. Subsequent to such submission, the court, of its own motion, made an order settling the issues of fact in the case, and directing them to be tried by a jury. From this order this appeal was taken.

*William Henry Anthon*, for appellant. The original motion to frame issues was properly denied. Trial by jury was expressly waived by the parties in open court (Code, § 266), and by their entering into the trial without a jury (*Greason* v. *Keteltas*, 17 N. Y. 498), as well as by their consent in writing. After trial commenced, it was too late to apply for issues. *People* v. *Albany, etc., Railroad Co.*, 7 Abb. N. S. 265; *O'Brien* v. *Bowes*, 10 Abb. 106. The court cannot direct issues after trial. *O'Brien* v. *Bowes*, 4 Bosw. 663. The decision must be filed in twenty days after trial. Code, § 267; *Coit* v. *Bland*, 12 Abb. 463.

*W. A. Beach* and *A. C. Brown*, for respondent. The court had power to make the order. It is a substitute for the submission of a feigned issue under the old practice. *Vermilyea* v. *Palmer*, 52 N. Y. 471. The court of chancery of England has always exercised this power (*Fisher* v. *Taylor*, 2 Hare, 218; *Raine* v. *Cairns*, 4 id. 327; *Trent* v. *Hanning*, 10 Ves. Jr. 495; *Stokes* v. *Edmeads*, McCl. & Y. 436), and in New York (*Munson* v. *Reed*, Clarke, 580), and in England even the appellate court. *Earle* v. *Pickin*, 1 Russ. & Mylne, 547; *Rhodes* v. *Beauvoir*, 6 Clark & F. App. Cas. 532. The award of issues is entirely in the discretion of the court. *Lansing* v. *Russell*, 2 N. Y. 563; *Candee* v. *Lord*, id. 277; *Wood* v. *Mayor*, 4 Abb. N. S. 152; *Birdsall* v. *Patterson*, 51 N. Y. 43; *Vermilyea* v. *Palmer, supra*.

BARRETT, J. The question presented by this appeal is, whether the court at special term, after trying an equity case, which remains in its hands under advisement, has power of its own motion to direct certain issues therein to be passed upon by a jury.

If, under similar circumstances, the late court of chancery was authorized to direct a feigned issue, we think the question must be answered in the affirmative; for the reason that, in our judgment, the Code of Procedure has not changed the former practice, except so far as to substitute a simple interrogatory for the legal fiction of a wager. Section 72, in abolishing feigned issues, expressly provides that, " instead thereof, *in the cases where the power now exists* to order a feigned issue, an order for the trial may be made, stating distinctly and plainly the question of fact to be tried." Under section 254 all issues, other than those specified in section 253, are " triable by the court, which, however, may order the whole issue, or any specific question of fact involved therein, to be tried by a jury." Section 469 preserves the then existing rules and practice of the courts in civil actions, so far as they are consistent with the Code of Procedure.

These three sections are in entire harmony, and they indicate a thoughtful design, running through the entire Code, of preserving the substance of the old practice as to feigned issues, and of abolishing only its cumbersome and useless forms. This, too, has been its practical effect. The court, at special term, like a court of chancery, frames the issue and sends it to the circuit for trial. It is done for the purpose of advising the conscience of the court. The effect of the verdict is also the same. The special term is not absolutely bound thereby. It accepts or rejects it in whole or in part, or it takes further testimony and finally pronounces the judgment, the verdict being merely an aid in enabling the court to arrive at a satisfactory result. *Birdsall* v. *Patterson,* 51 N. Y. 43 ; *Snell* v. *Loucks,* 12 Barb. 385 ; *Vermilyea* v. *Palmer,* 52 N. Y. 47. These, too, are important qualifications of the general rule stated in *O'Brien* v. *Bowes,* 4 Bosw. 666, that " our present system assimilates the practice in all actions, whether of law or in equity."

The question then recurs as to the power of the court of chancery with respect to the awarding of feigned issues. It is not doubted that this power was possessed at the hearing. Indeed, previous to the acts of 1838 and 1839, the practice of that court was not, in general, to grant an issue until after the testimony was taken in the case. *New Orleans, G. L. & B. Co.* v. *Dudley,* 8 Paige, 455. The chancellor then said that even " if an issue is refused " before the hearing, " it may still be necessary or proper for the court to award an issue at the hearing, in case there should be such a con-

flict of testimony " upon a given point as to render it doubtful.
This case was cited in *Church* v. *Freeman*, 16 How. 297, and Mr.
Justice HARRIS there held that the practice was substantially the
same under the Code.

In *Munson* v. *Reed*, Clarke, 580, it was held that on the hearing
of a cause where important rights depend upon a question of fact,
and the testimony is doubtful, the court may, on its own motion,
order a feigned issue; and in *Gardner* v. *Gardner*, 22 Wend. 536,
COWEN, J., speaks of "the general incidental power of the court of
chancery to award an issue in all proper cases."

It is difficult to perceive why this useful power, so freely exercised
upon the hearing, should be lost the moment the court becomes
possessed of the final argument, and expresses the intention of
taking time to consider its judgment.

The question, after all, is whether the testimony is sufficiently
conflicting to cause doubt. Must that doubt spring up at once
from the rapid examination and running comments at the hearing?
May the court not take the testimony, and may not the doubt be
born of its careful perusal, and of quiet and mature reflection
thereon?

This is not an evasion, but rather the comprehension and accept-
ance of the full measure of judicial responsibility. There would
be more color for such a charge where the issue is directed *upon the
hearing*, before the testimony has been sufficiently analyzed and
weighed to justify a conviction as to the existence of a really doubt-
ful conflict.

Nor is it, as claimed by the defendant, a refusal to give him the
benefit of the legal rules as to doubt; no more so than if the issue
had been directed at the hearing. The rule contended for would
put an end to the entire practice of taking the opinion of a jury in
aid of the judicial judgment. Doubt would be summarily solved
whenever the scales appeared to a single mind to be equipoise. Clearly,
the general rule is not interfered with because proper and well-
established means of removing doubt are resorted to. If, after the
verdict has come in, and the cause is submitted to the court upon
such verdict, in connection with all the testimony, the doubt remains,
it will then be time enough for the defendant to claim that the
plaintiff, holding the affirmative of the issue, must fail.

The order in question is not only defensible in principle, but it is
supported by precedent. As far back as 1740, Lord HARDWICKE

passed upon the legal effect of certain testimony in a cause, assuming such testimony to be true, but inasmuch as the contradictory evidence raised a doubt as to its truth, his lordship directed an issue on that question. *Richards* v. *Syms*, Barnardist. Ch. 90. This cause had been fully argued and submitted for judgment, which seems to have been pronounced orally — that is to the extent indicated — upon the conclusion of the hearing and arguments.

Such was always the rule of practice in England. *Fisher* v. *Tayler*, 2 Hare, 218; *Raine* v. *Cairns*, 4 id. 327; 12 Cl. & F. 833; *Trent* v. *Hanning*, 10 Ves. 495; *Attwood* v. *Small*, 6 Cl. & F. 232; *Stokes* v. *Edmeades*, McCl. & Y. 436. Many other citations might be added. In fact, the books are full of cases where issues have been directed after the final arguments and the submission of the cause for judgment.

In some of the cases issues were directed, in others actions at law. Whatever the particular procedure, it was adopted at every conceivable stage of the case; not only at the hearing, not only after the first arguments and submission, but after final judgment; in some instances, even upon appeal, the chancellor and the house of lords directing the issue. *Earle* v. *Pickin*, 1 Russ. & Myl. 547, was such an appeal, and "the lord chancellor," says the reporter, "ultimately ordered that the decree should be varied by directing the parties to proceed to a trial at law, upon the following issue," specifying it. *Rhodes* v. *Beauvoir*, 6 Clark & Finnelly App. Cas. 532, was an appeal to the house of lords. The reporter states that "after a great deal of argument, and consideration during the argument, and on several days afterward by the lord chancellor (Lord BROUGHAM), Lord ELDON, Lord PLUNKET and Lord WYNFORD, it appeared to their lordships to be the best course to direct issues; and, accordingly, it was ordered and adjudged that the cause be remitted to the court of chancery, with instructions according to the course of that court for the framing of issues in a court of law."

It was also a common practice for the chancellor to decide the principal questions in the cause, and then to direct an issue as to some one remaining question about which he was in doubt.

The issue in *Munson* v. *Reed*, above cited, from our own courts, was after the first submission of the cause to the vice-chancellor, who gave the direction at the close of a written opinion upon the whole case.

We have treated this subject more elaborately than would have

been deemed necessary but for the *dictum* of so distinguished a jurist as Mr. Justice WOODRUFF in *O'Brien* v. *Bowes*, 4 Bosw. 657. We say *dictum*, because it is quite evident, from an examination of the case, that the discussion of the present question was not necessary to the decision of the precise points appearing upon the record. What was complained of in that case was an order "dismissing the complaint without costs, unless the plaintiff apply, within five days after the service on her attorney of a copy of this order, for a trial of the questions of fact in this action under the Code, in which case the question of costs is reserved." Whatever may have been the intention, this, upon its face, was not a suspension of judgment until further light could be afforded. In fact, it *was* a judgment, though a species of conditional one which was wholly unauthorized under any system; and it gave the plaintiff leave to apply for that to which, at such a stage of the case, she was clearly not entitled. We agree that the reversal of such an order was perfectly correct, but we cannot concur in the incidental remarks of the learned judge, to the effect that the court was without authority to direct the issue of its own motion.

Judge WOODRUFF does not deny that such power was vested in the court of chancery. "We are aware," he says, "that the court of chancery was accustomed, when not satisfied by the proofs as they were exhibited, to order a cause to stand over for the production of further proofs." He bases his opinion entirely upon the effect of the Code. "Whatever might have been the powers of a chancellor," he remarks, "the Code has allowed him (the judge at special term) no choice." * * * "When the parties have closed their evidence and submitted the cause, the judge has no alternative; *he must decide.*"

We think this is stated too unqualifiedly. It is undoubtedly the duty of the judge to decide the case. Under section 267, it is even his duty to file his decision within twenty days — a provision, however, which is merely directory. Yet it will scarcely be doubted that the judge may order a re-argument of the cause. Even after he has decided, he may, if convinced that he has overlooked important evidence, or a decisive authority, grant a rehearing. Pending such re-argument or rehearing, the cause cannot be said to be absolutely *sub judice* and an issue may be directed upon the same principle which governs upon the hearing. For instance, in the present case, had Judge VAN BRUNT thought that his doubts might be

removed by further hearing of counsel, and accordingly directed a re-argument, the case would then have stood, with respect to this debatable power, quite· as it did upon the original summing up. The case would be still upon trial, and the court, previously bound in a general way to decide, could then exercise the privilege, which it undoubtedly possesses, of directing an issue at the trial. Here the court has simply done that directly which would scarcely have been questioned, if it had resulted, indirectly, from an intervening re-argument. Nor is this affected by the completion of the testimony. In chancery, the cause was brought to a hearing upon testimony which was taken out of court, and consequently, when the cases speak of the power of the court to decide an issue, *at the hearing*, they refer to the argument of the cause upon completed testimony.

It is also said in *O'Brien* v. *Bowes*, that "a trial cannot regularly be begun in one term and be finished at another." The conclusion arrived at by this learned judge, from this proposition, would practically limit the court, in directing an issue of its own motion, to cases where its necessity has not been developed. It would prevent an issue at the hearing, quite as much as after final submission. Indeed, it would be difficult to imagine a case where the procedure in question would be available at all. In the ordinary course, the court knows nothing of the nature of the issues, and can have no opinion as to whether a verdict is needed until at least the case is being opened. But the trial is then commenced, and if it must be finished before the adjournment, the issue, if directed, must be returned before such adjournment — in most cases a practical impossibility. *A fortiori* where evidence has been taken.

We do not, however, understand the cases to justify the proposition thus broadly put, and in the almost daily practice at special term it has certainly been ignored. It is undoubtedly settled that "a trial by the court cannot properly be had before several judges in succession,, so as, after being decided in part by one, to be taken up at another term and completed by another justice." *Belmont* v. *Ponvert*, 3 Rob. 693.

This is as far as the cases go; and, indeed, in the opinion delivered in *Belmont* v. *Ponvert*, which is later than *O'Brien* v. *Bowes*, and in the same court, we find this language: "I see no reason why a judge, sitting as in equity, at special term, may not so far follow the practice in the old court of chancery as to hear proofs and

determine, *in his own mind,* a portion only of the issues, and, after sending the case to a referee to take and report further proofs, again take it up on the coming in of such report, either during the same *or at a subsequent term,* and then, upon hearing counsel, render a final judgment. There is nothing in the Code expressly prohibiting such a course, and it appears to me the last clause of the 468th section may well be so construed as to authorize it; even conceding, as I do not, that any legislative authority is necessary to give that power to courts in equity cases."

It must not be overlooked, as it seems to have been in *O'Brien* v. *Bowes,* that the trial is not by *the judges,* but *by the court.* The case may be commenced, and may go over to another term, but it is still in the court and triable by the court. As a matter of convenience, the judge who originally presided would doubtless arrange to sit at the final hearing, but his absence would not prevent the bringing on of the cause upon the verdict, and all the testimony and proceedings. The cause would be then heard by *the court,* and it would be practically of but little moment whether such hearing should be deemed a continuation or a re-commencement of the trial. But this subject need not be pursued further. The effect of the order is not now before us for independent adjudication, and therefore we need say no more than that the questions respecting the subsequent procedure in the cause present no such difficulties as, of themselves, to throw doubt upon the power which was exercised at the special term.

The order appealed from should be affirmed, with costs.

DAVIS, P. J., and DONOHUE, J., concurred.

*Order affirmed.*